## CLARENCE M. JONES V. ELLIS O. JONES ET AL.

Common Pleas Court for Franklin County.

Decided October 14, 1932.

*David O. Peiros* and *Booth, Keating, Pomerene & Boulger,* for plaintiff.

*Frank M. Raymund* and *Hugh Huntington,* for defendants.

REYNOLDS, J.

Suit is brought by plaintiff to quiet title in six separate parcels of real estate described in the petition, of which plaintiff claims to be the owner of an undivided one-half interest in fee simple and entitled to possession of said undivided one-half interest.

The petition alleges that defendants Ellis O. Jones and Ellis O. Jones, Jr. claim an interest in said real estate adverse to plaintiff's right, and the appointment of a receiver to collect rents is sought.

Ellis O. Jones and Ellis O. Jones, Jr., who will be referred to as Ellis O. Jones, 2nd and Ellis O. Jones, 3rd, respectively, claim title to said premises as trustees for the benefit of themselves under the last will and testament of Laura E. J. Hanna, who in turn received all of said property, except an undivided one-half interest in Parcel No. 5 under the will of Ellis O. Jones, 1st, who was her father as well as the father of plaintiff and Ellis O. Jones, 2nd.

The plaintiff claims that the interest granted Mrs. Hanna under the father's will was a fee simple title, subject to be divested upon the death of the devisee without issue living at the time of her death, and that since Mrs. Hanna did die without issue her title was divested and that consequently she conveyed no interest in the property received from her father by means of the will under which defendants claim.

Defendants claim is that Mrs. Hanna received title in fee simple without condition, and therefore had title, which she conveyed to defendants by her will.

The determination of the issues in this case resolve therefore into an interpretation of the will of Ellis O. Jones, 1st. That will insofar as it is material or pertinent to this case provides as follows:

"Second: I give, devise and bequeath to my beloved wife, Eugenia M. Jones, in lieu of her dower in my real estate, during her natural life, or so long as she remains my widow, my residence, consisting of ninety-four (94) feet fronting on the corner of Park Street and Hubbard Avenue, running parallel with said Hubbard Avenue, 180 feet, and known as 813 Park Street, Columbus, Ohio, together with all the furniture, plates, pictures, horses and carriages, and including everything in and around my home, except as hereinafter stated. And I direct that no inventory or appraisement be made of my household goods so given by me to my said wife.

"Third: I give, devise and bequeath to my daughter, Laura, my Baby Grand Piano and the picture of my mother.

"Fourth: I give, devise and bequeath to my son, Clarence, the old family clock and my writing desk.

"Fifth: I give, devise and bequeath to my son, Ellis Oliver Jones, my gold watch and gold headed cane, and also the complete set of the Encyclopedia Brittanica.

"Sixth: I give and bequeath to my son, Clarence M. Jones, the sum of Thirty Thousand ($30,000.00) dollars, the same to be paid to him within two years from the date of my death, without interest.

"Seventh: It is my will and I so direct that my son Raymond V. Jones, shall receive from my estate, from the date of his majority, provided I die before he reaches his majority, and if not, then from the date of my death, until he reaches the age of twenty six (26) years the sum of six hundred ($600.00) dollars per annum, the same to be paid to him in monthly installments of Fifty ($50.00) dollars each; and when my son Raymond shall reach the age of twenty six (26) years, it is my will, and I so direct that he be paid, as soon after he reaches the age of twenty six (26) as my executors may find it convenient, the sum of five thousand ($5,000.00) dollars. And it is my will and I so direct, that from the age of twenty six (26) years, until the time said Raymond reaches the age of twenty eight (28) years, he shall receive the sum of eight hundred ($800.00) dollars per annum, to be paid to him by my executors in equal monthly installments; and when he shall reach the age of twenty eight (28) years, it is my will and I so direct that he shall be paid the sum of five thousand ($5000.00) dollars in cash; and from the age of twenty eight (28) years until the time said son Raymond reaches the age of thirty (30) years, he shall be paid the sum of one thousand ($1000.00) dollars per annum, the same to be paid to him in equal monthly installments by my said executors. And from the age of thirty (30) until my said son shall reach the age of thirty three (33) years, he shall receive the sum of twelve hundred ($1200.00) dollars per year, the same to be paid to him in equal monthly installments. And it is my will, and I so direct, that when my said son reaches the age of thirty three (33) years or as soon thereafter as my executors find it convenient, that he shall be paid the sum of forty thousand ($40,000.00) dollars in cash, without interest, the same to be his forever.

"Eighth: I give, devise and bequeath to my son, Ellis Oliver Jones, when he shall arrive at the age of twenty four years (24) the sum of ten thousand ($10,000.00) dollars, and when he arrives at the age of twenty six

(26) years, the sum of ten thousand ($10,000.) additional. And it is my will, and I so direct, that from the date of his majority, provided, however, I die before he reaches his majority, until the said two sums are paid to him respectively, he is to be paid the interest accruing from the said sums; and if I survive the date of his majority, then from the date of my death.

"Ninth: I give, devise and bequeath to my daughter, Laura E. Jones, and to her heirs when she shall arrive at the age of twenty two (22) years; my two brick store buildings, known as 229 and 231 North High Street, Columbus, Ohio, the same being a perpetual leasehold, and which I value at the sum of sixty thousand ($60,000) dollars. I also give, devise and bequeath to my said daughter the sum of ten thousand ($10,000) in cash, the same to be paid to her when she shall reach the age of twenty two (22) years, to be invested by her in improved real estate for her sole use and benefit forever.

"Tenth: It is my will, and I so direct, that my mother, Elizabeth Jones, shall live with my family so long as she desires to do so, and that there shall be supplied with suitable clothing and wearing apparel; and in the event that she no longer desires to live with my family, then my will is, and I so direct, that she be paid out of my estate the sum of twenty ($20.00) Dollars per month, during her lifetime; and it is my will, and I so direct, that in the event of my said mother surviving the date of the general distribution of my estate, as herein provided for, and not desiring to live with my family, that the sum of Four Thousand ($4000.00) Dollars be held and invested by my executors, the interest accruing from the said four thousand ($4000.00) dollars to be paid to my said mother during her lifetime and further, that at the death of my said mother she be buried in my family lot in Green Lawn Cemetery.

"Seventeenth: It is my will, and I so direct, that all accounts, charges, advances, which I have made to my children as shown by my private ledger and other evidences of indebtedness, during my lifetime, shall be deducted from their respective shares in the residue of my estate.

"Nineteenth: Should my son Raymond die without issue, his share of my estate shall be divided equally between his brothers and sisters or their legal representatives, share and share alike.

"Twentieth: Should either of my said sons Clarence or Ellis Oliver, or my daughter, die without issue, the share of the one dying shall go to the others, share and share alike, or their heirs.

"Twenty-first: It is my will and I so direct that when my daughter Laura arrives at the age of twenty two (22) years, being the year, 1898, and provided it is not less than one year after my death, a distribution shall be made of my estate, except as to my said son Raymond and my mother; first, by setting aside the sum of sixty thousand ($60,000.00) dollars in good interest paying securities, or good improved real estate, whichever my wife may prefer, the income of which to be hers for her sole use and benefit during her natural life, and to be controlled or managed by her or by her direction; this said sum of sixty thousand ($60,000) dollars to be in addition to that given her in previous sections of this will. And at the death of my wife, it is my will and I so direct, that what remains of said money and property so given her as aforesaid herein, shall be divided between my children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, and their heirs forever, share and share alike.

"Twenty-second: It is my will and I so direct that all the residue of my estate after paying the legacies and bequests heretofore made, be divided among my three children, Clarence M. Jones, Ellis Oliver Jones and Laura E. Jones, so that the share of each of my said three children in my estate shall be equal, except in this, that it is my intention that my son Clarence M. Jones shall have the sum of ten thousand ($10,000) dollars more than my son Ellis Oliver, in consideration of his services to me during my lifetime, and that my daughter, Laura, shall also receive the sum of ten thousand ($10,000) dollars more than my said son Ellis Oliver."

While the controversy in this case arises over property bequeathed to the daughter Laura in Items 9 and 22 of the Will of Ellis O. Jones, by reason of the provisions of Item 20 other portions of the Will are quoted as throwing light upon the intention of the testator; it being a well established rule of construction of wills that the intent of the testator is to govern, and that intention is to be gathered from the entire instrument.

It is plaintiff's contention that the interpretation to be placed on Item 20 is that if either of the two sons Clarence or Ellis O. Jones or the daughter Laura ever at any time should die without issue that such event would determine the estate granted to such beneficiary and it would then vest in the survivors.

Defendants contention is that the contingency named in Item 20 was to be determined as of the time of the death of the testator or at the latest at the time fixed in the will for distribution.

It is argued by plaintiff that the fact that the testator was in poor health and died within a few days of the execution of the will in September, 1894, precludes the possibility of the former being the intention of the testator as he must not have had anticipated that any of his children who were then unmarried would have any issue before his death or that they would not survive him, and authorities are cited in support of this argument.

Were there nothing further to show a contrary possibility there would be more weight to this argument, but Item 7 shows the testator's uncertainty of dying before the son Raymond reached the age of twenty one years, and Item 21 further discloses that he had in his mind the possibility of living at least three years after executing a will, during which time there might well have been issue born to his children and during which time some of them might have died. Item 8 also shows his uncertainty concerning the time of his death since there is suggested in said item the possibility of his living until after Ellis O. Jones should have arrived at the age of twenty one.

It is of little moment to say that because of making specific bequests to his children and providing for their guardianship during minority he expected them to outlive him. Every testator must expect the beneficiaries to outlive him otherwise there would be no reason for providing for them, but there can be no certainty with respect to the future and while expecting a survival, it is usual to provide for the contrary contingency.

It seems to be well established in Ohio that a devise in fee with the added provision that if the beneficiary die without issue then the other beneficiaries take, that a fee simple title is granted to the first taker subject to being divested, and that in case the second named beneficiary does take, the estate he takes is not by reason of a remainder which could not be attached to a fee, but he takes by way of an executory devise.

This rule started with the case of *Parish's Heirs* v.

*Ferris,* 6 Ohio State, 563, the syllabus of which is as follows:

"Where there is a devise in fee to A, but if he 'die without heirs', or 'without children,' or 'without issue', then to B in fee, the words 'if he die without issue' or words of similar import, are to be interpreted according to their popular and natural meaning, and as referring to the time of the death of A, unless the contrary intention is plainly expressed in the will, or is necessary to carry out its undoubted purposes; and if A have no children or issue living at the time he dies, B takes under such devise."

It is difficult to understand why such a syllabus was written for that case, as the case does not support it in any way, and while later cases do establish such proposition of law, it cannot be now found that such is the law because of the Parish case. That case had nothing to do with a devise in fee to the first taker, but a specific devise for life with a remainder in fee over to the children of the first taker, with the added provision that if the first taker should die without children, then the remainder was devised to the brothers and sisters of the testator.

What the case decided was that where there is a life estate with the remainder over in fee to the children of the life tenant, or if the life tenant dies without issue to other beneficiaries, the determination of the vesting of the fee was dependent upon the contingencies specified in the will as of the time of the death of the life tenant.

The difficulty in that case all arose over the fact that the life tenant had had a child which died before the life tenant, and it was argued that the fee had vested in such child on its birth, but the court rightly ruled that the fee only vested in the issue who may have been living at the time of the death of the life tenant.

From a reading of the decision of the court, the primary purpose seems to have been to depart from the established and arbitrary rule of the English courts that language of like import in a will created an estate in fee tail, which could be determined upon the failure of issue at any time subsequent to the death of the testator. This rule is

specifically disapproved not only in Ohio, but in practically all of the States of the Union, and our courts recognize no such estate.

In the case of *Niles* v. *Gray*, 12 Ohio State, 320, there was under consideration a will providing that:

"I give and bequeath to my youngest daughter, Margaret Harper, the remaining part of my real property.

"It is also to be understood, that should my youngest daughter, Margaret Harper, die without any legitimate heirs, her part of my real estate shall fall to my eldest son Matthew Harper."

The court held that this was a grant of a fee simple estate in Margaret, subject, however, to be determined by the contingency of her dying without issue living at the time of her death, on the happening of which, the estate would pass over to Matthew by way of executory devise.

In rendering its decision the court said at page 328:

"On the authority of *Parish* v. *Ferris*, then, we hold that the clause of the will of Robert Harper, relating to the limitation over the devise of his daughter, Margaret, must be considered as if the words, 'living at the time of her death' were added immediately after the words 'Legitimate heirs'."

While the decision of the court from its reasoning and other authorities cited would no doubt have been the same, it is unfortunate that the marked difference between the question involved and the question presented in the Parish case was not pointed out and discussed.

In the case of *Taylor* v. *Foster*, 17 Ohio State, 166, there was under consideration a will which provided as follows:

"Second: I will that the children of the body of my niece, Jane Foster, shall be my only heirs.

"I, therefore, hereby give and bequeath to the said children (naming five) all my estate, both real and personal.

"Third: It is my will that if any of the children of my niece named in the second place should die without issue, that the share or shares of such decedent or decedents shall be equally divided among the survivors of them."

And, the court ruled that "as to the real estate of the

testatrix held by her in fee there was vested in each of her devisees in common, with the others, an estate in fee simple, but determinable nevertheless, as to each of them, on the contingency of his or her dying without issue, and that on the happening of such contingency, the estate of the decedent or decedents passed to the survivor or survivors by way of executory devise; that on the death, without issue of either of the devisees, who under the provisions of the will had succeeded to a portion of the share of a prior decedent, the portion or portions to which he had thus succeeded, was subject to the same contingency as its original share and passed to the survivor or survivors in like manner."

Here again the Parish case seems to have been relied upon as authority for the court's decision.

In the case of *Lapham* v. *Martin,* 33 Ohio State, 99, there was under consideration a will which provided as follows:

"I give, devise and bequeath to Mary L. Lapham the sum of six hundred dollars.   *   *   *
"It is my will that if Mary L. Lapham shall die leaving no child of her own, then and in that case the sum of six hundred dollars bequeathed to her herein, shall be equally divided between my living children the issue of my body."

The court held that Mary L. Lapham took the bequest absolutely, and her estate, if the limitation over was valid (which the court did not decide) was liable to be divested by the happening of the contingencies named."

Suit in that case was brought by the beneficiary against the executor who had refused payment on the theory that she was only entitled to the interest on the bequest; the court, of course, holding in her favor.  Thereupon the children of the testator brought suit to enjoin the payment of the legacy and to require Mary Lapham to give bond. That case reached the Supreme Court and was decided in *Martin* v. *Lapham,* 38 Ohio State, 588, and the court again held that Mary L. Lapham owned her legacy and was entitled to the possession of it and was not required to give bond, affirming the decision rendered in 33 Ohio State, 99.

It is of interest, however, that the court in its decision said, at page 542:

"I may be permitted to suggest that possibly the true construction of this will is that Mrs. Lapham should take her legacy absolutely unless in the event that she should die childless before the time of final distribution, in which case only should the children of the testator receive it.

"I confess that I should myself be inclined to regard this construction as exeremely plausible were it not for the language of *Lapham* v. *Martin* above cited.

"The view, however, which we have all taken of this case renders the discussion of this unnecessary."

It is further to be noted that the question of such an interpretation of the will was not suggested by counsel in either case, nor considered by the court, except as above quoted.

In *Piatt* v. *Sinton, et al,* 37 Ohio State, 353, there was under consideration a will which provided as follows:

"I will and bequeath to Lucinda Francis Piatt, * * * all of my property of every description, whether real, personal, or mixed, after paying all my just debts, * * * and in case the aforesaid Lucinda Francis Piatt should die without leaving any legitimate heirs of her body, then I will and bequeath all my property of every description such as would be granted to her by this will, unto Catherine Wheeler, E. Demond Piatt, William Piatt and Daniel S. Piatt, children and heirs of my deceased brother, Daniel Piatt, to be equally divided."

The question for determination was whether Lucinda Piatt took a life interest or a fee, and while it was not necessary to decide more, the court went further and held that she took a fee simple title in the real estate, subject to be divested only by her dying without leaving legitimate heirs of her body, the court said:

"The construction of the will now in controversy is governed by the decision in *Niles* v. *Gray,* 12 Ohio State, 320. That case was decided in 1861, and has become a rule of property in this state, and we are not now disposed to reconsider it.

"The will in that case, as well as the will now in question, was made prior to the passage of the act of March 3, 1834, which declared, in effect, that a devise of lands, in

a will thereafter made, should be construed to convey a fee simple, and that the devisee should take all of the estate which the devisor had in the property, unless it appeared by express words or the manifest intent that a lesser estate was intended. The decision, therefore, in *Niles* v. *Gray*, was not founded upon that statute nor upon any subsequent one of like effect; but upon the terms of the will as construed without the aid of such legislation."

In the case of *Durfee* v. *MacNeil*, 58 Ohio State, 238, it was held that:

"A devise of lands to the two children of the testator, with the provision that 'should either die without heirs capable of inheriting, all such one's share and legacies under this will shall inure to the survivor,' vests in each an estate in fee determinable upon the contingency of death without children; and upon that contingency, the estate of the deceased child passes to the other by way of executory devise, although the deceased child leaves a husband surviving her."

There was, however, no citation of authority by the court.

In the case of *Briggs* v. *Hopkins et al*, 103 Ohio State, 321, the syllabus reads as follows:

"Where there is a devise or bequest to one coupled with the provision that if he die without issue such property shall go to anothr, the words 'die without issue' are to be interpreted as referring to the time of the death of the first taker, unless a contrary intention and purpose of the testator is clearly manifested."

The will under consideration in that case provided that:

"It is my will that whatever property I may own at my decease, both personal and real, be given to my daughter Mrs. Edna Bowes, and I wish it to be kept separate and apart from any other property that she may have, and if she should die without issue from her own body, then I wish the above mentioned property to be equally divided between my brothers and my sisters and the children of two deceased sisters (naming them)."

While the court erroneously stated that the facts were similar to the facts in the case of *Parish Heirs* v. *Ferris*, 6 Ohio State, 563, and applied the rule of construction

there enunciated to the words in the will in question: "If she should die without issue," and holding that they are to be interpreted as referring to the time of the death of the devisee, considerable emphasis was placed upon the provisions that the property devised to the first taker was to be "kept separate and apart from any other property that she may have," and following with the gift over in the case of the first taker dying without issue and the court correctly pointed out that there could have been no object whatever in directing or requiring the segregation of the property devised to her if the limitation or condition was to apply only in the event of the death of Edna Bowes prior to the death of the testatrix, and the court further stated:

"The language above quoted necessarily contemplates the taking of the property and the enjoyment thereof by Edna Bowes, but requires that the property be kept separate so that if the daughter die without leaving issue the express desire of testatrix that it pass to her brothers and sisters or their children might readily be effectuated. The testatrix by this provision clearly discloses her purpose that the title to Edna Bowes shall be a conditional or qualified fee, not passing absolutely in fee simple, but made subject to the contingency stated."

It is thus evident that the case was in fact decided upon the manifest intention of the testatrix as so clearly expressed in the will, rather than upon the rule of law as laid down in former cases cited. To have reached any other conclusion would, as the court pointed out, "completely annul the provision just referred to and dispose of the property of the testatrix in a manner contrary to her clearly expressed desire and purpose."

In the case of *Anderson* v. *Realty Company,* 79 Ohio State 24, the court held that:

"Where, in a will, there is a devise to a son, and if he dies without lineal descendants, living at the time of his decease, then over, these words are not, by themselves, without assistance from other parts of the will, sufficient to create an estate by implication in the lineal descendants, but the son takes a fee defeasible upon his death without lineal descendants, living at the time of his decease, and in the event of lineal descendants living at the

time of the son's decease, his fee becomes absolute and such descendants have no interest under the will as against his grantee."

In the case of *Grandin* v. *Millikin et al.*, 9 Ohio App., 372, there was a will under consideration which devised to the children of the testator the remainder of his property, "real, personal and mixed, share and share alike," with the added provision that:

"I do hereby give and bequeath—in case of the death of any of my said children, * * * without issue, that the portion going to and belonging to my estate to said child or children vest in the surviving child or children as above named share and share alike."

The court held in that case:

"That an estate in fee simple vested in each of the devisees, but determinable as to each child on the contingency of his or her dying without issue, and that upon the death of any of said children without issue at the time of said death, the portion provided for such child then passed to and vested in the surviving children."

In the case of *O'Malley* v. *O'Malley, Jr.*, 20 Ohio App., 279, there was under consideration a will which provided as follows:

"I give, devise and bequeath to my beloved son, John A. O'Malley (certain real estate described) same to be his absolutely and in fee simple. * * * In case my son John A. O'Malley should die leaving no lawful issue of his own body, the property herein bequeathed to him shall go to my grandson Theodore J. O'Malley, Jr. * * *"

The court held that the will "manifested the testator's intention to give the grandson only an estate which might come into being and vest on the death of the testator's son without lawful issue of his body, and that the son should have a vested estate in fee simple, subject to be divested if he should die without lawful issue of his body."

These cases comprise practically all of the cases in Ohio which sustain the plaintiff's contention as to the interpretation to be placed upon language similar to that contained in the will in question, and have been discussed at

length for the purpose of showing the particular facts in each case.

It is to be noted that in every instance while there was a devise in such language that without more, a fee simple title was granted, yet, only in the last case cited were there any words of perpetuity added to the language of the devise and in part distinguish those cases from other Ohio cases which are relied upon by defendant.

In *Hull* v. *Chisholm,* 7 Ohio App., 346, the will under consideration provided:

"Item 2nd. I will bequeath to Alice V. Hutchinson, * * * all the property of which I may die seized or possessed, both real and personal, to her and her heirs and assigns forever, * * *.

"Item 3rd. I will direct that in case of the death of the said Alice V. Hutchinson without leaving any child or children that whatever may remain of the property willed to her in the second item of this will shall be equally divided between my nephews, * * *."

The court held that:

"Where by the terms of a will a fee is clearly given, a limitation over of the remainder is void as inconsistent with the fee granted."

In *Watkins* v. *Price,* 16 Ohio Appeals, 27, there was under consideration a will which provided as follows:

"Item 2nd. I give, devise and bequeath to my beloved husband Benjamin Watkins all my property be it real, personal or mixed. In case there is any property left at the death of my husband, * * * it is my desire that it shall go to my sisters."

The court held that:

"An absolute estate, conveyed by an item in a will in clear and unequivocal language cannot be cut down or limited by a subsequent clause in the same item in words which are not as clear and decisive as those in the clause conveying the estate."

To the same effect is *Alexander et al* v. *Willis,* 30 Ohio Appellate, 289.

In *Baker* v. *McGrew,* 41 Ohio State, 113, there was

under discussion a will which provided, after a gift of the residue of testatrix's estate to the children of six named daughters, that:

"In case of the death of all the children without issue of either of my daughters, * * * then the one sixth share coming to them so deceased, shall be given to the surviving children of my said daughters."

The court held that the contingency as to the death of all the children of any daughter was one to happen before the death of the testatrix, and said:

"The word 'coming' taken in connection with the words 'shall be given' solves this question. * * *
"The use of the words 'shall be given' are very significant. In the first instance Mrs. Hertzler devised, gave and bequeathed one sixth of the remainder of her estate to Catherine and Daniel Baker. Upon the death of the testatrix it was the duty of the testator (evidently meaning executor) to place the devisees, * * * in possession of the property, * * *. The words 'shall be given' were evidently intended as a direction to the executor as to what to do, in case this could not be done. This contingency could not happen if the grandchildren survived the testatrix. It could only happen in case all the children of one or more of the daughters died before the death of Mrs. Hertzler.
"Giving the words of her will their ordinary and natural meaning, we conclude that the contingency contemplated could only arise in case the devisees should die prior to testatrix's death."

In discussing this decision in *Grandin* v. *Millikin,* 9 Ohio Appellate, 372, cited above, the court said:

"This case (*Baker* v. *McGrew*) seems to be contrary to all of the other cases found in the Ohio reports. It was decided by the Supreme Court commission without any reference to the other cases which have been cited above, and the decision seems to be based upon a finding of intention contrary to the general rule based upon the peculiar wording of the will then under consideration."

It was therefore decided on the general rule which is applicable in all cases involving the construction of wills, and that is the intention of the testator should govern

and no hard and fast rule as to construction can be laid down which would defeat that intention, if it is manifest from the language used.

As was said by the court in *Sinton* v. *Boyd,* 19 Ohio State, 30, in discussing the rule of survivorship:

"This undoubtedly is the general rule recognized in this country, subject, of course, to such modifications as the paramount rule, giving effect to the intention of the testator, may require."

If we are to depend solely upon Item 20 of the will in question then in accordance with the general rule as adopted in *Niles* v. *Gray,* 12 Ohio State, 320, and followed consistently in subsequent cases, it would be necessary to hold that fee simple estates were granted to each of the three children of the testator, subject to be divested upon the contingency of their dying without issue. However, if a different intent is manifest from the will as a whole, then the general rule as laid down in these cases should be departed from and the paramount rule of the intention of the testator should prevail.

Counsel for plaintiff make the assertion in the brief filed herein that the specific gifts made in the 3rd, 4th, 5th and 6th items to three of the children are not included in the "share" of each, which is to go over in case of death without issue.

By what process of reasoning this conclusion is reached is not clear. Surely the $30,000.00 given to Clarence in the 6th item is just as much a part of his "share" of his father's estate as money or real estate he might receive as a part of the residue of the estate devised in the 22nd item, or what he might receive from the remainder devised to the mother, as evidenced by Item 21.

Such a conclusion is also entirely inconsistent with the provisions of the will as to the son Raymond who is given specific bequests of money under the 7th Item, which comprise all that he was to receive from his father's estate, and necessarily the reference in Item 19 to Raymond's share in the estate was referring only to such specific devise.

Surely the "share" each child was to receive in the

father's estate was the entire portion or part of such estate granted him or her by the will and not a part only of that portion.

With this then in mind, if either of the three children should die at any time without issue, according to plaintiff's contention as to the meaning of Item 20th the $30,000 given to Clarence in the 6th Item, the $20,000 given to Ellis Oliver in the 8th Item and the $10,000 given to Laura in the 9th Item, together with the cash received by each as their respective shares in the residuary estate under Item 21st, and in the remainder under Item 22nd, along with the real estate devised in the several Items would go to the survivor or survivors by way of an executory devise.

There is nothing in the will to indicate such intention on the part of the testator. Large sums of money were given to his children both by specific devise and in the general bequests with absolutely no restrictions as to the use of said money. It was theirs to do with as each saw fit, and this being true there could be no limitation over by way of executory devise.

As the court said in *O'Malley* v. *O'Malley,* 20 Ohio App. 279;

"It is settled that an absolute power of disposition or alienation in the first taker defeats a limitation over by way of executory devise."

The testator must not have intended then that the money so given by him to his children would be available at some distant future date, to be apportioned among the survivors, in case one or more of these children should die without issue, and since he included both real estate and money under the contingency set out in Item 20th, the logical and necessary conclusion is that he did not intend the real estate to go over upon such a contingency.

The reasonable construction to be placed upon the testator's intention as gathered from the whole will, as must be done, is that the contingency of dying without issue refers to the several times of distribution.

In the case of Raymond the time of distribution was extended over a period of some twelve years. In the

case of Clarence a part of the distribution was to be within two years of the testator's death, and in the case of Ellis Oliver there was to be a partial distribution when he arrived at the age of 24 and another partial distribution when he arrived at the age of 26. In the case of Laura the specific distribution was to occur when she reached the age of 22, and this was also fixed as the time for the distribution of the residuary estate between the three children. Again there was to be distribution among the same three when the widow of the testator should die.

The testator was providing against the contingency of one or more of his children dying without issue before these various times of distribution to the end that none of his property should be intestate, and made a complete and full testamentary distribution of all his property.

The parties heretofore regarded the will as conveying absolute fees in the property received by them from the testator. This is evidenced by the deeds executed by the several beneficiaries in making an amicable distribution of their father's real estate in which deeds absolute titles in fee simple were granted to each of the children by the others. It is further evidenced by the fact that Ellis Oliver mortgaged the real estate so conveyed by him to his brother, Clarence, and upon which mortgage foreclosure proceedings were instituted, and the property sold at Sheriff's sale to the said mortgagee. If Clarence M. Jones, who was the mortgagee, should now prevail in the contention advanced by him in this case, it might have well resulted in his being divested of the title of said premises upon the death of Ellis without issue, and this certainly could not have been in the minds of the parties at the times of the transactions in question. Furthermore, the plaintiff in this action has at all times treated the real estate received directly by him from his father's estate as being his absolutely without any possibility of his fee title being terminated by death without issue.

After the death of Eugenia M. Jones, the mother of these children, a suit was brought by Laura who had theretofore inter-married with a Mr. Hanna, against her two brothers, Clarence and Ellis Oliver, asking for partition of the property which the said mother held for life

under the will of Ellis Oliver Jones, the 1st, this case being numbered upon the dockets of this court, 115713. A defense was interposed in that action based upon the same claim which the plaintiff now presents, to-wit, that title to the property as granted by the will was such that partition was not proper, but the court held that the plaintiff was entitled to a partition and further held that the three children held the real estate as tenants in common and had an absolute, indefeasible and unqualified fee simple title to said real estate.

While it is true, as plaintiff points out, that the right to partition did not necessarily depend upon the three children having an absolute and indefeasible fee simple title, but that it was subject to be partitioned even though the fee simple title was subject to defeasance, nevertheless, the opinion of the court in deciding the case and granting the right to partition must have considerable weight with this court, since an able and capable Judge did give his interpretation of the will and the intention of the testator as manifested therein.

In a recent case, *First Citizens Trust Co., Guardian* v. *Mary P. Harris*, No. 125443, decided in this court, there was under consideration the will of William G. Deshler, which provided as follows:

"Item VI. All of my estate and property, real, personal and mixed, not heretofore specially given, bequeathed or devised, shall be my residuary estate, which I give, bequeath and devise to all of my children, * * * share and share alike. In case any of my children shall die leaving issue, the share of the deceased shall go to the issue of the deceased equally. In case any of my children shall die leaving no issue, then the share of the deceased shall be equally divided among all of my remaining children."

The question to be decided was whether a life estate was granted to the children, or whether a fee simple title was granted, or, in other words, whether the contingency of a child's dying was to be determined as of the time of the death of that child or whether it was to be determined as of the time of the death of the testator. This court held that the will was to be interpreted as meaning

whenever the death of a child should occur and therefore that only a life estate was granted to the children of the testator, but this decision was reversed in the Court of Appeals, where it was decided that the will was to be interpreted as giving an absolute, indefeasible fee simple title to such children as should survive the testator.

While a somewhat different question was involved in that case, nevertheless, the same principle is present and the decision of the Court of Appeals must necessarily have much weight in the decision of the instant case.

Section 10580, General Code, provides as follows:

"Every devise in a will of lands, tenements or hereditaments, shall convey all the estate of the devisor therein, which he could lawfully devise, unless it clearly appears by the will that the devisor intended to convey a less estate."

Were it not for the decisions in this State, beginning with *Parish's Heirs* v. *Ferris, supra,* this statute would be determinative of the issue in this case, as it certainly does not clearly appear that the testator intended to convey less than an absolute, indefeasible title to his property by his will.

However, construing the will according to the well established rule that the intention of the testator shall prevail, it is the conclusion of this court that the manifest intention as evidenced by the entire will, was to grant an absolute, indefeasible fee simple title to his property to such of his children as were surviving at the several separate times of distribution. Such being the conclusion of the court, this decision is in no way inconsistent with the several cases heretofore cited and relied upon by the plaintiff.

Such being the interpretation which the court places upon the will in question, it is held by the court that the plaintiff is not the owner of and is not entitled to an undivided half interest in the real estate described in the petition, and it is therefore ordered that the plaintiff's petition be dismissed and that the defendants recover their costs. An entry may be drawn in accordance with this decision, saving such exceptions as are desired by the parties.